United States District Court
Southern District of Texas
**ENTERED**
March 31, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| R. MICHAEL LEE, § § § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-22-2027 |
| § | |
| AT&T SERVICES, INC., *et al.*, § § | |
| Defendants. § § § | |

**MEMORANDUM AND ORDER**

Michael Lee experienced a significant but all-too-common annoyance: his internet service was disrupted, and his carrier, AT&T, did not respond to his repair request for two weeks. AT&T then dispatched a utility crew to Lee's property to find the problem and repair it if possible during their visit. AT&T crew members Victor Manual Medrano and Carlos Sanchez arrived to try to fix the internet service by repairing lines that had fallen. Lee, who apparently is elderly and lives alone, locked Medrano and Alvarez in the fenced backyard of Lee's home. Lee kept the gate locked to be sure the crew stayed until they fixed his internet. The crew members wanted to leave, but Lee refused to unlock the gate. Lee apparently spoke no Spanish and the crew members spoke little English, making matters worse.

The crew used their cell phones to call the police when Lee would not unlock the gate and let them out of his backyard. Two Houston Police Department Officers, T.D. Chapman and N.P. Matthews, arrived at the scene and asked Lee to unlock the gate. Lee refused. The officers began to cut the lock. Lee objected. The officers then climbed over the gate and arrested Lee for unlawful restraint, a charge that was later dismissed.

Lee has sued AT&T, Medrano, Alvarez, Officer Chapman, Officer Matthews, and the City of Houston, alleging civil conspiracy and violations of his Fourth and Fourteenth Amendment rights. He seeks a declaratory judgment against AT&T and its employees under 28 U.S.C. § 2201 and money damages against the officers and the City of Houston under 42 U.S.C. § 1983.

Three motions to dismiss are pending. The City of Houston moves to dismiss, asserting that Lee has failed to state a claim for municipal liability under § 1983. (Docket Entry No. 22). Officer Chapman and Officer Matthews move to dismiss, asserting qualified immunity. (Docket Entry No. 23). AT&T moves to dismiss, asserting the lack of an actual controversy between the parties, as required under the Declaratory Judgment Act. (Docket Entry No. 25).

Having reviewed the briefs, the responses, the record, and the law, all three motions are granted. This case is dismissed with prejudice because amendment would be futile. The reasons are explained below.

I.      **Factual Background**

Medrano and Alvarez arrived at Lee's home on February 28, 2019. Lee unlocked his gate, let Medrano and Alvarez into the property, and then locked the gate behind them. An hour or so later, Lee apparently tried to check on Medrano and Alvarez's progress, but they spoke only Spanish and he spoke only English. Lee attempted to tell the contractors that they needed to get an AT&T supervisor on site or arrange for AT&T to translate for him so Lee could be sure that they had finished the repair correctly and restored the internet. Lee left the workers outside in the yard behind the locked gate and went back inside his house, where he made multiple calls to different numbers that he believed would reach high-level AT&T management. During this time, the crew members reached someone in their office, and reported that the homeowner had them

confined to his backyard, behind a locked fence, and was refusing to let them out. The AT&T office worker alerted law enforcement.

A Deputy Constable arrived at Lee's residence and met Lee at his front door. Lee explained that he was keeping the workers inside the fence until they fixed his internet and gave the Deputy Constable the AT&T contact information. The Deputy Constable tried to call someone at AT&T, without success. Lee told the Deputy Constable that the AT&T workers needed to be stay and refused to release them. The Deputy Constable left the residence.

Soon after, another Deputy Constable arrived with Houston Police Department Officers Chapman and Matthews. The officers approached the locked gate that Lee was standing behind, told him that they had a report of people held against their will, and asked for his side of the story. Lee began by "pleading the Fifth." He then went on to say that he was waiting for AT&T officials or the crew members' supervisor to come to the residence. One of the police officers instructed Lee to unlock the gate. He did not do so, instead repeating that a representative of AT&T or the crew members' supervisor need to show up before he would release the crew members.

The officers then instructed the crew members to cut the lock to open the gate. Lee told warned them not to damage his property and again insisted on waiting for an AT&T representative or the contractors' supervisor to arrive. Lee continued to insist that the crew members had to stay in his backyard until they received instructions from AT&T to properly finish their job. Lee insisted that by refusing to let the workers leave, he was just "doing the best he could to protect his life, safety, and well-being with the cards he had been dealt."

Lee then told the workers and the law-enforcement officers to wait while he went to the back of his house to check his internet. When he returned to the gate, Lee saw what appeared to be one of the AT&T crew members trying to cut the locked gate with bolt cutters. Lee ran toward

3

them, yelling in English that the workers had to stop and not damage his property (the padlock). By the time Lee got to the gate, the lock had been cut, but it was stuck in the gate and preventing it from opening. As Lee reached into his pocket for the key to the lock, one officer climbed to the top of the fence, jumped over, and grabbed Lee, who fell to the ground. The other officer followed suit and helped handcuff Lee's hands behind his back, find his key, and unlock the gate. The crew members left, and the officers escorted him to their police car.

Lee repeatedly asked the officers what he was being arrested for, but allegedly received no answer. He believed that he heard the officers trying to persuade Medrano and Alvarez to press charges, but that they were reluctant to do so. While he Lee was in the police car, Medrano approached and apologized to Lee. Lee alleges that the officers may have been racially motivated to press charges "because he was an older white man living in a predominantly black neighborhood."

Lee was arrested, charged with the misdemeanor offense of unlawful restraint, released on bond. He was later diagnosed with a concussion and injuries to his kneecap and back. On March 31, 2021, the State of Texas moved to dismiss the criminal action because Lee had "completed 5 therapy sessions."

Lee brought this suit in state court in February 2022. Lee asserted claims for malicious prosecution and conspiracy under 42 U.S.C. § 1983, in violation of his Fourth and Fourteenth Amendment rights, and sought a declaratory judgment. The City of Houston removed to federal court based on federal-question jurisdiction. The City of Houston, AT&T, and Officers Chapman and Matthews all filed individual motions to dismiss all of Lee's claims.

## II. The Legal Standards

### A. Rule 12(b)(6)

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).

A court may "consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint." *In re Sec. Litig. BMC Software, Inc.*, 183 F.Supp.2d 860, 882 (S.D. Tex. 2001) (internal quotation marks omitted). Consideration of documents attached to a defendant's motion to dismiss is limited to "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M*

*Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). The court may consider these extrinsic materials without converting to a summary-judgment motion. *See Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366).

When a complaint fails to state a claim, the court should generally give the plaintiff a chance to amend before dismissing the action with prejudice, unless amendment would be futile. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Amendment is futile if an amended complaint would still fail to state a claim. *See Mandujano v. City of Pharr, Texas*, 786 F. App'x 434, 438 (5th Cir. 2019); *Bernegger v. Dep't of Revenue*, 785 F. App'x 209, 211 n.1 (5th Cir. 2019).

**B.  Municipal Liability**

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). A local government may not be sued under § 1983 for the deprivation of rights guaranteed by the Constitution or federal law inflicted solely by its employees or agents. Instead, it is "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983." *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipal entity may not be held liable under § 1983 based on vicarious liability for the acts of its employees. *Id.*

To assert a § 1983 claim against the City of Houston and Harris County, a plaintiff must allege three elements: (1) a policymaker; (2) an official policy or custom; and (3) "a violation of constitutional rights whose moving force is the policy or custom." *Id.* (quoting *Zarnow v. City of*

6

*Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010)); *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (en banc).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. Official policy may be found in "written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting reference omitted); *Piotrowski*, 237 F.3d at 581–82. As the Fifth Circuit has summarized:

> [Fifth Circuit] caselaw establishes three ways of establishing a municipal policy for the purposes of *Monell* liability. First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim."

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (footnotes omitted) (quoting references omitted).

"A policy is only official when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy." *Brown v. City of Houston*, 297 F. Supp. 3d 748, 765–66 (S.D. Tex. 2017) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Jackson v. Valdez*, 852 F. App'x 129, 135 (5th Cir. 2021) (per curiam) (quoting reference omitted). "To plausibly plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do

7

more than describe the incident that gave rise to [her] injury." *Id.* (quoting *Peña v. City of Rio Grande*, 879 F.3d 613, 622 (5th Cir. 2018)). The complaint "must contain specific facts" of the practice or custom. *Taylor v. Hartley*, 488 F. Supp. 3d 517, 541 (S.D. Tex. 2020) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018)).

The policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting reference omitted); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell*, 436 U.S. at 691)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.* at 407. Instead, it "must amount to an intentional choice, not merely an unintentionally negligent oversight." *James*, 557 F.3d at 617–18 (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992)).

"In order to find a municipality liable for a policy based on a pattern, that pattern must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017). "Showing a pervasive pattern is a heavy burden." *Sanchez v. Young County*, 956 F.3d 785, 793 (5th Cir.), *cert. denied*, 141 S. Ct. 901 (2020). "A pattern requires similarity, specificity, and sufficiently numerous prior incidents," based on the context of the incident and the City's police force. *Davidson*, 848 F.3d at 396–97. Alleging two dissimilar incidents, over an eight-year period,

8

involving police using force in the fourth-largest city in the United States, was insufficient to plead a practice so persistent and widespread as to have the force of law as a municipal policy. *See, e.g.*, *Carnaby v. City of Houston*, 636 F.3d 183, 189–90 (5th Cir. 2011) (finding no pattern from two reports of violations of a policy in four years in Houston); *Peterson*, 588 F.3d at 851 & n.4 (finding no pattern from 27 complaints of excessive force over four years in Fort Worth); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (finding no pattern from 11 incidents of warrantless searches in Houston).

### C. Qualified Immunity

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant invokes qualified immunity, "the burden shifts to the plaintiff to show that the defense is not available." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted).

A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021). "These steps may be considered in either order." *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018).

The first prong requires the plaintiff to point to facts that could support a finding of a constitutional rights violation. *Pearson*, 555 U.S. at 232. The second prong requires the plaintiff to show that "'the state of the law' at the time of an incident provided 'fair warning' to the

defendants 'that their alleged [conduct] was unconstitutional.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (alterations in original) (citation omitted). In other words, "[t]o defeat qualified immunity, a plaintiff must demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Shumpert*, 905 F.3d at 321 (emphasis omitted) (quoting *Hernandez v. United States*, 785 F.3d 117, 120 (5th Cir. 2015) (en banc)). "In determining what constitutes clearly established law, th[e] court first looks to Supreme Court precedent and then [to Fifth Circuit precedent]. If there is no directly controlling authority, [the] court may rely on decisions from other circuits to the extent that they constitute 'a robust consensus of cases of persuasive authority.'" *Shumpert*, 905 F.3d at 320 (citations omitted).

At the motion to dismiss stage, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "After the district court finds a plaintiff has so pleaded, if the court remains unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) (emphasis omitted) (citations and internal quotation marks omitted).

### D.     The Declaratory Judgment Act

The Declaratory Judgment Act, 28 U.S.C. § 2201, allows a federal court to issue declaratory relief "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). The court may issue a declaratory judgment when "the facts alleged, under the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273

(1941). The Declaratory Judgment Act "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant." *Sherwin–Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003). "The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.*

**III.     Analysis**

    **A.     The City of Houston**

The crux of Lee's claim is that he did not unlawfully restrain Medrano and Alvarez and that the City of Houston Police Officers lacked probable cause to arrest him. To assert a claim against the City of Houston, Lee must allege an official policy or custom, promulgated by an official policymaker, that violated his constitutional rights. *Monell*, 436 U.S. at 691. A municipality may not be held liable under § 1983 based on vicarious liability for the acts of its employees. *Id.*

> The operative complaint asserts the following bases for municipal liability:
>
> J. The City of Houston through its Police Chain of Command under the aegis of the Chief of Police who is a policymaker for City in the matters of pole training and supervision, investigated through its supervising officers the matters surrounding the February 28, 2019 events at 5504 Ardmore and ratified Chapman's and Matthews' noncompliance with City policies and/or statutes.
>
> K. The City of Houston failed to adequately train or supervise Chapman and/or Matthews in the Texas Penal Code or Code of Criminal Procedure, specifically on issues of defining and identifying TPC 22.02 Probable Cause.
>
> L. The City of Houston has a widespread practice of permitting each officer to define probable cause and even coerce witnesses to file charges to coverup for police misconduct.

(1941). The Declaratory Judgment Act "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant." *Sherwin–Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003). "The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.*

**III.     Analysis**

    **A.     The City of Houston**

The crux of Lee's claim is that he did not unlawfully restrain Medrano and Alvarez and that the City of Houston Police Officers lacked probable cause to arrest him. To assert a claim against the City of Houston, Lee must allege an official policy or custom, promulgated by an official policymaker, that violated his constitutional rights. *Monell*, 436 U.S. at 691. A municipality may not be held liable under § 1983 based on vicarious liability for the acts of its employees. *Id.*

> The operative complaint asserts the following bases for municipal liability:
>
> J. The City of Houston through its Police Chain of Command under the aegis of the Chief of Police who is a policymaker for City in the matters of pole training and supervision, investigated through its supervising officers the matters surrounding the February 28, 2019 events at 5504 Ardmore and ratified Chapman's and Matthews' noncompliance with City policies and/or statutes.
>
> K. The City of Houston failed to adequately train or supervise Chapman and/or Matthews in the Texas Penal Code or Code of Criminal Procedure, specifically on issues of defining and identifying TPC 22.02 Probable Cause.
>
> L. The City of Houston has a widespread practice of permitting each officer to define probable cause and even coerce witnesses to file charges to coverup for police misconduct.

(Docket Entry No. 16 at 19). Lee has failed allege facts sufficient to support a plausible inference that the City has a policy, pattern, or practice of allowing its officers or employees to define probable cause beyond its constitutional limits, or to "coerce witnesses to file charges to coverup for police misconduct."

Nor has Lee sufficiently alleged facts to state a failure-to-train claim under § 1983. To do so, Lee must allege facts that, if proven true, show three elements: "(1) that the municipality's training procedures were inadequate"; "(2) that the municipality was deliberately indifferent in adopting its training policy"; "and (3) that the inadequate training policy directly caused the violations in question." *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting reference omitted). "Municipal liability doesn't attach merely because 'a particular officer may be unsatisfactorily trained' or 'an otherwise sound program has occasionally been negligently administered.'" *Taylor*, 488 F. Supp. 3d at 535 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989)). And proof that the plaintiffs' injury "could have been prevented if the officer had received better or additional training cannot, without more, support liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

To survive the motion to dismiss, Lee "must allege with specificity how the training program is defective" as to "the tasks the particular officer[s] must perform." *Taylor*, 488 F. Supp. 3d at 535. The operative complaint makes a conclusory allegation that the City failed to adequately train its police officers; the complaint "neither alleges specific facts about the training protocols in [the City of Houston] nor describes any deficiencies in the program in light of [the identified police officers'] assigned duties." *Id.* Lee has not "identified a specific training program or shown how it is inadequate." *See Ratliff*, 948 F.3d at 285 (the allegation that "'a deficiency in training actually

12

caused [the defendants] to violate [the plaintiff's] constitutional rights' . . . does not state a claim for relief and warrants dismissal under Rule 12(b)(6)").

Because the complaint fails to allege a claim for municipal liability, the City of Houston's motion to dismiss, (Docket Entry No. 22), is granted. To the extent Lee seeks to amend his complaint to plead facts relating to municipal liability, the motion is denied with prejudice because amendment would be futile. Lee's allegations are directed only against individual City employees. That is precisely the type of claim prohibited under *Monell*. *See* 436 U.S. at 691.

### B. The Officers

Officers Chapman and Matthews seek to dismiss on the basis of qualified immunity. (Docket Entry No. 23). To survive the motion to dismiss, Lee must show: "(1) that the [officers] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021).

The Fourth Amendment prohibits unreasonable seizures. U.S. CONST. amend. IV. "Under the Fourth Amendment, a seizure occurs when, under the totality of the circumstances, a reasonable person would have thought he was not free to leave." *Keller v. Fleming*, 952 F.3d 216, 222 (5th Cir. 2020) (citing *Michigan v. Chesternut*, 486 U.S. 567, 572 (1988)). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person." *Terry v. Ohio*, 392 U.S. 1, 16 (1968) (internal quotations omitted). "Absent probable cause, warrantless searches and seizures are presumptively invalid or '*per se* unreasonable under

the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" *Keller*, 952 F.3d at 223 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

Because there is no question that the facts alleged pleaded a seizure—Lee was arrested—the "relevant question . . . is . . . whether a reasonable officer could have believed [the seizure] to be lawful, in light of clearly established law and the information the . . . officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "In other words, Plaintiffs must point this court to a legislative directive or case precedent that is sufficiently clear such that every reasonable official would have understood that what he is doing violates that law." *Keller*, 952 F.3d at 225 (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "Fourth Amendment reasonableness 'is predominantly an objective inquiry.'" *al-Kidd*, 563 U.S. at 736 (citation omitted). The court must "ask whether 'the circumstances, viewed objectively, justify [the challenged] action,'" and "[i]f so, that action was reasonable 'whatever the subjective intent' motivating the relevant officials." *Id.* (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978); *Whren v. United States*, 517 U.S. 806, 814 (1996)).

To avoid dismissal on the basis of qualified immunity, it is Lee's burden to point to precedent that under the circumstances and clearly established law, Officers Chapman and Matthews's seizure was unreasonable. Lee cannot meet this burden. He states that the Officers did not have probable cause because he told them that the AT&T crew members had not complained or demanded release. (Docket Entry No. 16 at 13). That is not enough. The employees had been in the backyard of his home for hours, with the gate locked. They could not get out, and there is no evidence of a clear alternate way to leave Lee's enclosed property. When the police officers arrived, they asked him to unlock and open the gate. Lee repeatedly refused. Lee has not pleaded facts showing that the officers' response to his continued refusal to release the

crew members violated his constitutional rights or that a violation was clearly established. The Houston Police Officers' motion to dismiss, (Docket Entry No. 23), is granted.

### C. AT&T

Lee's seeks relief against AT&T under the Declaratory Judgment Act. Under the Act, Lee cannot obtain money damages against AT&T; he must "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality," which can be cured by a declaratory judgment. *Md. Cas. Co.*, 312 U.S. at 273. Lee cannot even establish a claim against AT&T to survive Rule 12(b)(6) dismissal, let alone show a sufficient controversy under the Declaratory Judgment Act. There is no live dispute between Lee and AT&T or its employees. Lee faces no "imminent threat of harm." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 (2007). AT&T's motion to dismiss, (Docket Entry No. 25), is granted.

### III. Conclusion

The motions to dismiss, (Docket Entry Nos. 22, 23, 25), are granted. This case is dismissed with prejudice, because amendment would be futile. Final judgment will be entered separately.

SIGNED on March 31, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge